Leeanne WRIGHT, et al.,
Plaintiffs-Appellants,

v.

The CITY OF OZARK, et al.,
Defendants-Appellees.

No. 82–7213.

United States Court of Appeals,
Eleventh Circuit.

Sept. 26, 1983.

Julian McPhillips, Jr., Montgomery, Ala., for plaintiffs-appellants.

Copeland, Franco, Screws & Gill, Robert D. Segall, Montgomery, Ala., for Nicholson, Benefield and Blackmon.

Before TJOFLAT, HILL and JOHNSON, Circuit Judges.

TJOFLAT, Circuit Judge:

On the evening of December 29, 1981, Leeanne Wright was raped by an unknown assailant in Ozark, Alabama. Wright sub-sequently brought this action for damages under 42 U.S.C. §§ 1983 & 1985(3) (Supp. V 1981) against the City of Ozark, the mayor of Ozark, the Chief of Police, and a member of the police department. Wright alleged, inter alia, that the defendants had deliber-ately suppressed information of prior rapes in Ozark in order not to jeopardize business and commercial activity in the city. She alleged that had the defendants not sup-pressed this information, she would have become aware of it, and she would not have been in the high-crime area where she was raped on the night of the rape. She claimed that the defendants' actions violat-ed her rights under the due process and equal protection clauses of the fourteenth amendment. The district court dismissed the complaint for failure to state a claim for relief under either sections 1983 or 1985(3). We affirm.

We assume that all facts alleged in Wright's complaint are true. Further, we recognize that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Basically, Wright alleged a conspiracy on the part of the defendants to withhold from the public and the press information that a number of rapes had occurred in Ozark during 1980 and 1981, including one that occurred a month before she was raped. The purpose of the conspiracy was to "protect the good name of the City of Ozark" in order not to damage the city's commercial potential. She alleged further that had the defendants not suppressed the information, she, as a reader of the local newspapers, would have become aware that a rapist or rapists were running loose in the city of Ozark. Had she known this, she asserted, she would not have visited a friend who lived in a dimly-lit trailer park bordering on a high-crime neighborhood on the evening of December 29.

Wright characterized the defendants' ac-tions in repressing this information as aris-

ing from official policy, as systematic and deliberate, and as constituting such a high degree of gross negligence and reckless indifference to her rights as to amount to willful and intentional misconduct. Wright admitted, however, that the defendants did not intentionally single her out to be denied protection from a rapist. Indeed, there was no allegation that any of the defendants even knew Wright before the rape occurred. Rather, Wright alleged that she was the unfortunate victim of the defendants' reckless conduct.

Our analysis of the relevant case law convinces us that Wright's due process claim must fail because she cannot prove under any set of facts alleged that defendants violated any constitutional duty owed to her. Regardless whether the cases speak in terms of lack of duty or lack of causation, the result is the same: generally, the due process clause of the Constitution does not protect a member of the public at large from the criminal acts of a third person, even if the state was remiss in allowing the third person to be in a position in which he might cause harm to a member of the public, at least in the absence of a special relationship between the victim and the criminal or between the victim and the state.

In the Supreme Court case most closely analogous to the one at bar, the Court held that a murder committed by a parolee five months after his release could not subject the parole board to liability under section 1983 to the survivors of the decedent even if the board acted recklessly in releasing the parolee. *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). In holding that the parole board was not responsible for the "deprivation" of life within the meaning of the fourteenth amendment, the Court first observed that the parolee, whose act occurred five months after his release, was in no sense an agent of the parole board. *Id.* at 285, 100 S.Ct. at 559. Second, the Court noted that "the parole board was not aware that appellants'

decedent, as distinguished from the public at large, faced any special danger." *Id.* The Court concluded that "the appellants' decedent's death is too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law." *Id.*

In a recent case interpreting *Martinez,* the Court of Appeals for the Tenth Circuit affirmed the district court's dismissal of a claim brought under section 1983 by the victim of a rape against the state parole board. *Humann v. Wilson,* 696 F.2d 783 (10th Cir.1983). Notably, the court could have distinguished *Martinez* because *Martinez* involved a crime committed five months after the parolee's release, whereas *Humann* involved a crime committed within one to two months of release. The court did not believe this was a basis for distinguishing the two cases, however. Instead, it pointed out that the observations the Court made in *Martinez*—which the *Humann* court labeled "conditions"—were equally true in the case before it. The parolee could not be deemed an agent of the state in choosing to commit a crime. Furthermore, the plaintiffs' decedent stood in no special relationship to the parolee that would have alerted the parole officers to a special danger to the decedent. Thus, the court found *Martinez* controlling.

In *Bowers v. DeVito,* 686 F.2d 616 (7th Cir.1982), the administrator of a decedent's estate brought a section 1983 action against officers and physicians of a mental health facility. The defendants had released from the facility a person who a year later murdered the decedent. The administrator alleged that the defendants knew that the murderer was dangerous when they released him, and thus acted recklessly in doing so. The Court of Appeals for the Seventh Circuit affirmed the district court's grant of summary judgment in favor of the defendants. Although the court recognized *Martinez,* it did not base its holding thereon. Instead, it recognized that section 1983 imposes liability only if there is a depriva-

tion of a constitutional right. The court found no constitutional right to be protected by the state against being attacked or murdered by criminals. 686 F.2d at 618. It proceeded:

It is monstrous if the state fails to protect its residents against such predators but it does not violate the due process clause of the Fourteenth Amendment or, we suppose, any other provision of the Constitution. The Constitution is a charter of negative liberties; it tells the state to let people alone; it does not require the federal government or the state to provide services, even so elementary a service as maintaining law and order. Discrimination in providing protection against private violence could of course violate the equal protection clause of the Fourteenth Amendment. But that is not alleged here. All that is alleged is a failure to protect Miss Bowers and others like her from a dangerous madman, and as the State of Illinois has no federal constitutional duty to provide such protection its failure to do so is not actionable under section 1983.

*Id.* In short, the court found no constitutional duty owed by the defendants to the decedent.

A case invoking a similar rationale to the one the court invoked in *Bowers* is *Reiff v. City of Philadelphia,* 471 F.Supp. 1262 (E.D. Pa.1979). In that case, the plaintiff, a customer in a store, was shot and wounded during a holdup. He brought a section 1983 action against the City of Philadelphia and alleged that the city police pursued a policy of failing to respond to calls for assistance until a crime had actually been committed and that the police failed to provide adequate protection in a high-crime area. Conceding that such police conduct might be unwise, the court held that the allegations of the complaint did not state any breach of a constitutional duty. Accordingly, it dismissed the complaint.

■ Although the above cases did not all involve police defendants, we think they stand for the general proposition that the due process clause of the Constitution provides no basis for imposing liability through application of the civil rights statutes on state officers who either negligently or even recklessly facilitate the criminal actions of a third party, absent some special relationship between the victim and the criminal or between the victim and the state officer. We have found no substantial authority to the contrary. *But see Huey v. Barloga,* 277 F.Supp. 864 (N.D.Ill. 1967). Furthermore, the above proposition is consistent with traditional tort analysis which recognizes that although police officers owe a general duty of care to the public at large, they owe no duty to any particular member of the public, absent a special relationship. *South v. Maryland,* 59 U.S. (18 How.) 396, 15 L.Ed. 433 (1856); *see* Note, *Police Liability for Negligent Failure to Prevent Crime,* 94 Harv.L.Rev. 821, 822–828 (1981).

■ It is undisputed that Wright stood in no special relationship to either the rapist or any of the defendants. *Cf. Byrd v. Brishke,* 466 F.2d 6 (7th Cir.1972) (police officers may be liable for negligently failing to protect one who is beaten by third parties in their presence). Further, we see no reason to create in this case an exception to the general proposition stated above. Thus, we follow the great weight of authority in holding that even if the defendants purposefully conspired to suppress information in reckless disregard of Wright's well-being, they breached no constitutional duty owed to her.

Although the defendants may have owed no duty under the due process clause to protect Wright from a rapist, we assume that they did owe a duty under the equal protection clause not to discriminate in providing law enforcement services. In order to prevail on such a claim, however, Wright would have to show "intentional or purposeful discrimination." *Snowden v. Hughes,* 321 U.S. 1, 7–9, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944); *Gamza v. Aguirre,* 619 F.2d 449,

453–54 (5th Cir.1980); *Shock v. Tester,* 405 F.2d 852, 856 (8th Cir.1969). In her complaint, Wright alleges not one fact from which a purpose to discriminate either against her or against women or against any other class could be inferred. Thus, her equal protection allegation fails.

The judgment of the district court is, accordingly,

AFFIRMED.