Edward DUDOSH, Administrator of the Estate of Kathleen Dudosh

v.

CITY OF ALLENTOWN, Dean Schwartz and Daniel Warg.

Civ. A. No. 85–4066.

United States District Court, E.D. Pennsylvania.

Dec. 18, 1985.

Richard J. Makoul, Allentown, Pa., for plaintiff.

Robert G. Hanna, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

The above captioned matter comes before this Court for consideration of the defendants' motion to dismiss the plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). We shall first address the issues raised by the defendants' motion to dismiss the complaint on the basis of F.R.C.P. 12(b)(6).

When considering a motion to dismiss, we are guided by the following well-known maxims: that all well-pleaded allegations will be accepted as true, that the complaint should be construed liberally and in favor of the plaintiff, that a complaint should not be dismissed unless it appears beyond doubt that no set of facts may be proven which would entitle the plaintiff to the relief requested, and finally, that the issue is not whether the plaintiff will recover, but rather whether he is entitled to submit evidence to support his claims. *McClain v. Real Estate Board of New*

*Orleans, Inc.,* 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); and *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). However, in this Circuit, a plaintiff pursuing a cause of action under Title 42 of the United States Code §§ 1983 and/or 1985 must plead the facts giving rise to the claimed deprivation of civil liberties with specificity and avoid vague and conclusory allegations in the complaint. *Rotolo v. Borough of Charleroi,* 532 F.2d 920 (3d Cir.1976) and *Cardio-Medical Associates v. Crozer-Chester Medical Center,* 536 F.Supp. 1065 (E.D. Pa.1982).

Before addressing the issues raised by the defendants' motion to dismiss, we believe the overall facts of this case, as alleged in the plaintiff's complaint, merit recital.[1] According to the complaint, Kathleen Dudosh, the deceased, obtained a temporary protection-from-abuse order on October 19, 1984, from the Court of Common Pleas of Lehigh County of the Commonwealth of Pennsylvania against one Richard P. Miller pursuant to 35 Pa.C.S. § 10181 *et seq.* This temporary order was made permanent by the Lehigh County Court on January 21, 1985. Miller is claimed to have beaten the deceased on at least one occasion prior to her death to such an extent that she required hospitalization. The plaintiff alleges further that the deceased was required to contact the Allentown Police Department on numerous occasions to seek assistance due to Miller's continued threats, harrassment and assaults. Ms. Dudosh allegedly informed the Allentown police many times that Miller had threatened to kill her and himself. The plaintiff also charges that when the police responded to the deceased's requests for assistance and found Miller at her residence in violation of the PFA Order, they refused to "carry out the court order and to protect plaintiff's decedent and failed to

arrest Miller". (Plaintiff's Complaint, ¶ 17).

The climax of this unfortunate series of events occurred on March 28, 1985. On that date, the deceased again contacted the Allentown Police Department to request assistance when a neighbor informed her that Miller had broken into her residence and was still there. The individual defendants responded to Ms. Dudosh's call and "took plaintiff's decedent to her second-floor apartment and instructed her to open the door to her residence and to enter before them while they stood back from the entranceway". (Plaintiff's Complaint, ¶ 22). Miller then "shot and killed Kathleen Dudosh ... and then shot and killed himself". (Plaintiff's Complaint, ¶ 23). All of this is alleged to have occurred after the deceased had informed the individual defendants personally that Miller was a danger due to his "continuous harrassment, assaults and threats of murder and suicide". (Plaintiff's Complaint, ¶ 21).

The plaintiff in his complaint sets forth seven (7) counts against Dean Schwartz and Daniel Warg (the "individual defendants") and the City of Allentown (the "municipal defendant"). In Count One, he alleges the individual defendants deprived the deceased of her Fourteenth Amendment rights to due process and equal protection due to their failure to provide her with adequate protection, and seeks to hold them liable pursuant to 42 U.S.C. § 1983. He avers in Count Two pursuant to 42 U.S.C. § 1985(3) that the individual defendants conspired to deprive the deceased of her right to equal protection "because of her sex by agreeing to deny her reasonable protection under the circumstances". (Plaintiff's Complaint, ¶ 32). The plaintiff, in Count Three, seeks to hold the municipal defendant liable pursuant to 42 U.S.C. § 1983, averring that the individual defendants were acting "pursuant to a policy of sex discrimination against females ... approved, encouraged and acquiesced in by"

---

1. For the reasons stated above, we are required to accept as true the well-pleaded allegations of the plaintiff's complaint. Our recital of the facts of this case as alleged in said complaint should, therefore, in no way be taken as an expression by this Court as to its opinion of the merits of the plaintiff's claim or the veracity of said allegations.

the municipal defendant. (Plaintiff's Complaint, ¶ 38). He further alleges that the deceased was denied her right to due process because of this policy of discriminating against women in that the deceased was not provided with adequate protection. The plaintiff in Count Four avers that the individual defendants acted pursuant "to a policy of invidious discrimination in the handling of domestic complaints ... approved, encouraged and acquiesced in by" the municipal defendant and contends that, therefore, the municipal defendant should be liable under § 1983. He alleges in the alternative in Count Five that the municipal defendant should be held liable pursuant to § 1983 because its "non-existent or grossly inadequate rules, regulations or procedures governing police officers relative to handling of domestic matters in general and violations of protection-from-abuse orders in particular" and its "training or failure to train in this regard" resulted in the deprivation of the deceased's Fourteenth Amendment rights to due process and equal protection. (Plaintiff's Complaint, ¶¶ 48 and 50). The plaintiff in Counts Six and Seven alleges pendent state law wrongful death and survival actions against both the individual and municipal defendants.

The defendants move this Court to dismiss the plaintiff's complaint pursuant to F.R.C.P. 12(b)(6) for the following reasons:

(a) Plaintiff uses broad conclusory statements to allege collusion and conspiracy among the Defendants without specific reference to individual Defendants or any actions taken by them upon which the allegations of conspiracy may be based.

(b) Defendants Schwartz, Warg and the City of Allentown owed no legal duty to protect the Plaintiff's Decedent the breach of which would give rise to a cause of action.

(c) Plaintiff has failed to state a prime facie case of denial of the right to equal protection of the laws, and

(d) The claims alleged by Plaintiff against Defendants are barred or limited by the Act of October 5, 1980, P.L. 693, No. 142, 42 Pa.C.S. § 8541 et seq., providing governmental immunity.

## A. The lack of factual specificity.

As stated above, this and other Circuits have veered somewhat from the general principles of federal notice pleading so as to require a plaintiff in a civil rights action to allege the specific facts he claims constituted a deprivation of his civil liberties. See Rotolo v. Borough of Charleroi, supra, and Cardio-Medical Associates v. Crozer-Chester Medical Center, supra. The individual defendants argue the plaintiff has not met this burden with regard to his § 1985(3) claim, i.e., Count Two of the complaint. We disagree.

■ To state a cause of action under § 1985(3), the plaintiff must plead that (1) there was a conspiracy between the individual defendants; (2) to deprive the deceased of the equal protection of the laws; (3) that the individual defendants committed an act in furtherance of the conspiracy; and (4) the deceased was injured in her person or property and deprived of her rights and privileges as a citizen of the United States. See Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) and Sellers v. Local 1598, District Council 88, AFSCME, 600 F.Supp. 1205 (E.D.Pa.1984). The plaintiff has alleged that the individual defendants agreed between themselves not to protect the deceased because of her sex and that their failure to protect Ms. Dudosh resulted in her death. While the plaintiff may ultimately be unable to prove the facts he alleges, we believe he has plead enough specific facts so as to prevent us from dismissing his § 1985(3) claim pursuant to a Rule 12(b)(6) motion. The purpose of requiring plaintiffs in civil rights actions to plead specific facts is twofold: to weed out frivolous claims and to give the defendants notice of the exact conduct on their part which is alleged to have constituted a deprivation of the individual's civil liberties. By ruling as we do, we do not believe we are vitiating this rule.

### B. The scope of § 1985(3).

■ While not alluded to in their motion, the individual defendants in their brief raise the further question of whether plaintiff's alleged class of abused women would qualify plaintiff for relief under § 1985(3).[2] The Supreme Court in *Griffin v. Breckenridge, supra,* specifically left open the question "whether a conspiracy motivated by invidiously discriminatory intent other than racial bias would be actionable under ... § 1985(3)". 403 U.S. at 101–03, 91 S.Ct. at 1798–99, 29 L.Ed.2d at 348. The Third Circuit in *Novotny v. Great American Federal Savings & Loan Association,* 584 F.2d 1235 (3d Cir.) *rev'd. on other grounds,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), answered this question in the affirmative when it held classes distinguished by gender fall within the statute.[3] *See also, C & K Coal Co., et al. v. United Mine Workers of America,* 704 F.2d 690 (3d Cir.1983); *Skadegaard v. Farrell,* 578 F.Supp. 1209 (D.N.J.1984); *Schnabel v. Building and Construction Tracks Council of Philadelphia,* 563 F.Supp. 1030 (E.D.Pa.1983); and *Horne v. Farrell,* 560 F.Supp. 219 (M.D.Pa.1983). The individual defendants argue, however that based upon the Supreme Court's recent decision in *United Brotherhood of Carpenters v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049, *reh. denied,* 464 U.S. 875, 104 S.Ct. 211, 78 L.Ed.2d 186 (1983), it is highly questionable whether conspiracies based upon a sex-based animus continue to come within the remedial scope of § 1985(3). While we may view the individual defendants' argument as well-founded, and perhaps highly prophetic, we cannot reach the conclusion they desire, *i.e.,* that sex discrimination does not come within the scope of class-based animuses covered by § 1985(3).

The Supreme Court in *Carpenters v. Scott, supra,* was faced with the question of whether conspiracies motivated by an economic or commercial animus came within the scope of § 1985(3). The lower courts had held that not only does § 1985(3) reach conspiracies other than those motivated by racial bias, but it also forbids conspiracies against workers who refuse to join a union. While the Supreme Court explicitly disagreed with the latter conclusion, it only stated it *would not affirm the former conclusion.* 463 U.S. at 834–35, 103 S.Ct. at 3358–59, 77 L.Ed.2d at 1058. There is no doubt that the Supreme Court expressed grave concern as to whether § 1985(3) applied to conspiracies other than those motivated by racial bias. However, we believe the concern the Supreme Court expressed in *Carpenters* is no greater than it expressed in *Griffin v. Breckenridge, supra.* More importantly, this Court believes that the Supreme Court in *Carpenters* went no further in its holding than it did in *Griffin,* and continues to leave unanswered the question of whether § 1985(3) reaches conspiracies other than those motivated by racial bias. Thus, we are obligated to follow the Third Circuit's ruling in *Novotny* and its progeny. *See Skadegaard v. Farrell, supra.*

### C. The deceased's right to adequate police protection.

■ The municipal and individual defendants next argue that since they owed no legal duty to provide the deceased with adequate police protection they did not violate her Fourteenth Amendment right to due process as alleged in the § 1983 actions or act negligently as alleged in the state law courts. We agree with the defendants'

---

**2.** While the plaintiff in his complaint speaks in terms of abused women, as opposed to those who are not abused, we construe the complaint to allege the defendants discriminated against the deceased because of her gender, not because of the fact she may have been abused.

**3.** The Supreme Court reversed the Third Circuit's decision in *Novotny* on the grounds that § 1985(3) could not be used to remedy viola-

tions of rights conferred by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* We, along with other courts, believe the Third Circuit's holding as to the scope of class-based animuses encompassed by § 1985(3) continues to be good law which we must follow. *See Skadegaard v. Farrell,* 578 F.Supp. 1209, 1218 (D.N.J.1984).

argument that absent some special relationship between the police and the injured party the mere failure to provide adequate police protection in no way constitutes a deprivation of an individual's constitutional rights or an act of negligence. *See Wright v. City of Ozark*, 715 F.2d 1513 (11th Cir. 1983); *Byrd v. Brishke*, 466 F.2d 6 (7th Cir.1972); *Reiff v. City of Philadelphia*, 471 F.Supp. 1262 (E.D.Pa.1979); *Huey v. Barloga*, 277 F.Supp. 864 (N.D.Ill.1967); and *Morris v. Musser*, 84 Pa.Cmwlth. 170, 478 A.2d 937 (1984). We disagree, however, based upon the facts as alleged in the complaint, with their contention that such a special relationship did not exist here.

The Court in *Reiff v. City of Philadelphia, supra* (Broderick, J.), rejected the plaintiff's contention that the failure to provide an essential service such as police protection rose to the level of a constitutional violation, and held that the Constitution does not explicitly or implicitly provide such a right. However, the Court qualified its holding when it stated:

> The fact that the U.S. Constitution does not provide a right to adequate police protection does not mean that whenever a state or municipality undertakes to provide such a service it may do so in a manner which violates a constitutional right ... This means that the City, as an arm of the State, must not violate the guarantees of due process and equal protection.

*Id.* at 1266.

The Eleventh Circuit Court of Appeals in *Wright v. City of Ozark, supra*, similarly qualified its ruling. The court stated,

> that the due process clause of the Constitution provides no basis for imposing liability through application of the civil rights statutes on state officers who either negligently or even recklessly facilitate the criminal actions of a third party, *absent some special relationship be-*

*tween the victim and the state officers.* (Emphasis added).

Most recently, the Third Circuit Court of Appeals in *Estate of Bailey By Oare v. County of York*, 768 F.2d 503 (3d Cir. 1985), vacated the dismissal of a § 1983 action by the district court, which had held that "there was no constitutional deprivation by the state such as would support a cause of action in this court". 580 F.Supp. 794 (M.D.Pa.1984). In *Bailey*, the deceased child was murdered by her mother and the mother's paramour and cohabitant. The plaintiff alleged York County Child and Youth Services (YCCYS) had been informed of the physical abuse the child was suffering and in response removed the child from the home to have her examined by a doctor. However, despite confirmation of the likely existence of abuse by the examining physician, YCCYS returned the child to the custody of the mother. The child's untimely death ensued shortly thereafter.[4]

The district court in *Bailey*, relying heavily upon *Jensen v. Conrad*, 570 F.Supp. 91 (D.S.C.1983), had dismissed the § 1983 claim on the ground the child was not in the physical custody of YCCYS when she was murdered. The Third Circuit, as did the Fourth Circuit in *Jensen*, 747 F.2d 185 (4th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 1754, 84 L.Ed.2d 818 (1985), however, rejected this reasoning and held "that a right to affirmative protection need not be limited by a determination that there was a 'custodial relationship'." *Bailey*, 768 F.2d at 509, quoting *Jensen*, 747 F.2d at 194.[5] The Third Circuit's analysis, rather, turned on the question of whether some "special relationship" existed between the deceased and YCCYS which would give rise to a right to protection. The Third Circuit, of course, concluded that based upon the allegations of the plaintiff's complaint in *Bailey* that such a relationship might have

---

4. As here, the Third Circuit and the district court in *Bailey* based their rulings solely on the allegations contained in the plaintiff's complaint.

5. The district court in *Bailey* rendered its decision before the Fourth Circuit Court of Appeals reversed the district court's decision in *Jensen* on appeal, and it is for this reason that it relied only upon the district court's decision.

indeed existed between the deceased and YCCYS. For the reasons stated hereafter, we reach a similar conclusion.

The Third Circuit in *Bailey* described a number of factors that should be considered when determining whether the "special relationship" described above exists. They are:

> ... whether the victim or the perpetrator was in legal custody at the time of or prior to the incident; whether the state had expressly stated its desire to provide affirmative protection to a particular class or specific individuals; and whether the state knew of the victim's plight.

*Id.* at 509, citing *Jensen,* 747 F.2d at 194–195, n. 11.[6]

■ Applying these factors to the particular facts of this case—as alleged in the plaintiff's complaint—we can reach no other conclusion than that the requisite special relationship did exist between the deceased and the defendants in this case. First, the municipal defendant had actual notice of Miller's violent conduct directed towards this particular individual by virtue of the PFA Order issued by the Lehigh County court. The PFA Order, in fact, placed an affirmative duty upon the police department to protect the deceased in that it ordered the department "to enforce the Order of October 19, 1984, and remove the Respondent from the premises at 336 North Ninth Street should they be notified that the Respondent has violated said Order". The Lehigh County Court further directed that a copy of the order "be served forthwith upon the Respondent and the Allentown Police Department".[7]

Second, the deceased had contacted the municipal defendant numerous times to obtain assistance and had informed said police department of Miller's threats to kill himself, and more importantly, Ms. Dudosh.

Third and finally, the deceased is alleged to have personally informed the individual defendants shortly before her death of Miller's continuous harrassment, assaults and threats of murder and suicide. Thus, the deceased was not just a member of the public at large who through fate and misfortune becomes a victim of crime in a situation over which the police had no control or notice. She was a specific individual who had been subjected to particularized assaults and threats of murder. For these reasons, based upon the allegations of the plaintiff's complaint, we conclude that a special relationship did exist between the deceased and the defendants such that would vest in Ms. Dudosh a right to adequate police protection. We, therefore, also conclude that the plaintiff has set forth causes of action against the defendants pursuant to § 1983 for the deceased's alleged deprivation of her Fourteenth Amendment right to due process.

**D. The failure to state a cause of action for denial of equal protection.**

■ The municipal defendant next claims the plaintiff has failed to set forth a cause of action under § 1983 for the alleged denial of Ms. Dudosh's Fourteenth Amendment right to equal protection. The defendant claims specifically that the plaintiff has failed to plead the requisite discriminatory intent or purpose necessary to

---

**6.** We also note with particular interest the fact the Third Circuit in *Bailey* cited with apparent approval language in the district court's decision in *Thurman v. City of Torrington,* 595 F.Supp. 1521 (D.Conn.1984), to the effect that "City officials and police officers are under an affirmative duty to preserve law and order, and to protect the personal safety of persons in the community". *Id.* at 1527. As stated by the Third Circuit, "This duty was held to require officials having notice of the possibility of attacks on women in domestic relationships 'to take reasonable measures to protect the personal safety of such persons in the community'."

*Bailey,* 768 F.2d at 510, quoting *Thurman,* 595 F.Supp. at 1527.

**7.** Although the plaintiff did not attach copies of the various PFA orders issued by the Lehigh County Court to his complaint, but rather included them as part of his "Supplemental Memorandum of Law To Plaintiff's Brief In Opposition to Defendants' Motion To Dismiss", we will in the interests of judicial economy and efficiency consider them as though they were incorporated into said complaint.

support a claim for the denial of equal protection. We disagree. The plaintiff's complaint is replete with allegations the defendants acted deliberately, purposefully, and wilfully. We cannot, therefore, say as a matter of law that the plaintiff has not set forth a cause of action for the deceased's alleged denial of her right to equal protection of the laws.

## E. The state law claims.

■ Regarding the plaintiff's state law claims contained in Counts Six and Seven of the complaint, the defendants argue, once again, that because no "special relationship" existed between them and Ms. Dudosh, they owed her no duty to provide her with adequate police protection, and thus cannot be held liable under any theory of common law negligence. They also argue, as stated earlier, that they are immune from suit under the provisions of Pennsylvania's Political Subdivision Tort Claims Act, Act of October 5, 1980, P.L. 693, No. 142, section 221(*l* ), 42 Pa.C.S. § 8541 *et seq.*, for any negligent acts or omissions they may have committed. We agree with the latter argument. However, the plaintiff also alleges in Counts Six and Seven that the defendants committed "willful misconduct" and that they acted "intentional(ly), willful(ly) and wanton(ly)" by purposely failing to protect the deceased because of her sex. (See Plaintiff's complaint, ¶¶ 56, 69 and 72). For these acts, *i.e.*, acts of "actual malice or willful misconduct", Pennsylvania's Political Subdivision Tort Claims Act provides no immunity for government employees. Section 8550 does not waive governmental immunity on behalf of the municipal entity itself however.[8] *See e.g., Paul v. John Wanamakers, Inc., et al.,* 593 F.Supp. 219 (E.D.Pa. 1984) and *Buskirk v. Seiple,* 560 F.Supp. 247 (E.D.Pa.1983).[9] Therefore, we will dismiss the plaintiff's claims contained in Counts Six and Seven of the complaint only insofar as they seek recovery against the individual defendants based upon any alleged negligent acts and/or omissions on their part and only insofar as they allege claims against the City of Allentown.[10]

Having concluded the plaintiff has stated causes of action under §§ 1983 and 1985(3), we will deny the defendants' motion to dismiss the plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).

An appropriate order follows:

## ORDER

AND NOW, this 18th day of December, 1985, upon consideration of the defendants' motion to dismiss the plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the plaintiff's response thereto, and all memoranda of law submitted by the parties in support of their respective positions, the defendants' motion is GRANTED only insofar as it seeks dismissal of the plaintiff's state law claims against the City of Allentown and only insofar as it seeks dismissal of the plaintiff's state law claims for any negligent acts and/or omissions that may have been committed by Dean Schwartz and/or

8. 42 Pa.C.S. § 8550 provides:

"In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, *actual malice or willful misconduct,* the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitations on damages) shall not apply.

1980, Oct. 5, P.L. 693, No. 142, § 221(*l* ), effective in 60 days. (Emphasis added).

9. In *Buskirk, supra,* this Court stated, "42 Pa.C.S. § 8550 jettisons only those immunities held by municipal employees and then only for forms of willful misconduct. This section does not, however, abrogate the general retention of *municipal* immunity". *Id.* at 252.

10. Having held the individual defendants are immune from suit for any negligent acts or omissions they may have committed under the provisions of Pennsylvania's Political Subdivision Tort Claims Act, we do not reach the issue whether the individual defendants owed a duty under Pennsylvania law, as opposed to the United States Constitution, to provide the deceased with adequate police protection.

Daniel Warg. The remainder of the defendants' motion is DENIED.

IT IS FURTHER ORDERED that the defendants shall file an answer in response to the plaintiff's complaint within twenty (20) days of the date of this order.