Natasha **TRETHEWEY; Joel Thomas Grimmette III, a minor by and through Natasha Trethewey, his next friend and guardian of his property; and the Estate of Gwendolyn T. Grimmette, deceased**

v.

**DeKALB COUNTY, GEORGIA; F.D. Hand, Jr., Director, Department of Public Safety, DeKalb County, Georgia; R.T. Burgess, Sr., Chief, Bureau of Police Services, DeKalb County, Georgia; John Does 1 through 5, Employees of DeKalb County, Georgia.**

Civ. No. C86–1208.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 25, 1987.

Anthony J. McGinley, Malcolm C. McArthur, H. Sanders Carter, Jr., Carter Ansley, Smith & McLendon, Atlanta, Ga., for plaintiffs.

Albert Sidney Johnson, Decatur, Ga., Wade H. Watson, III, Karen G. Kirkpatrick, Johnson & Montgomery, Atlanta, Ga., for defendants.

## ORDER

ORINDA D. EVANS, District Judge.

This § 1983 action is before the court on Defendants' motion for summary judgment.

Plaintiffs' § 1983 claim arises out of the June 5, 1985 fatal shooting of Gwendolyn Grimmette by her estranged ex-husband, Joel Grimmette. Joel Grimmette had a history of inflicting serious physical abuse on Gwendolyn Grimmette both during the marriage and after their divorce in 1983. In March, 1984, he was tried for the attempted murder of Gwendolyn Grimmette and for criminal trespass. He was convicted of criminal trespass and sentenced to serve twelve months in prison. While in prison, he wrote to his son and threatened to kill Gwendolyn. After his release from prison in March, 1985, he resumed making abusive phone calls to his ex-wife in which he threatened to kill her.

On June 1, 1985, Gwendolyn Grimmette discovered that a corrosive chemical had been poured over the car of her friend, Johnny Thompson, which was parked in front of her house. She called the DeKalb County Police and Officer Renaud investigated the matter. She also informed Renaud about her ex-husband's phone calls and he suggested that she swear out a warrant for his arrest. Officer Renaud circulated information about the incident and made periodic surveillance of Gwendolyn Grimmette's apartment complex during his shifts from June 1 to June 4. On June 3, a DeKalb County District Attorney's office investigator installed recording equipment on Gwendolyn Grimmette's telephone to monitor the calls made by Joel Grimmette. On June 3 and 4, police patrols and surveillance near Gwendolyn Grimmette's home were increased. On the night of June 4, Al Frazier from the District Attorney's office told Lieutenant Garrett of the DeKalb Police that there was sufficient evidence from the recorded phone calls to arrest Joel Grimmette for making terroristic threats. Sometime after midnight, Lieutenant Garrett dispatched an officer, Officer Manikowski, to Gwendolyn Grimmette's apartment to make an incident report. Officer Manikowski ascertained that an arrest warrant had been issued for Grimmette. He patrolled the apartment complex several times during the night until his shift expired at 4:00 a.m.

Lieutenant Garrett, patrolled the apartment complex between 4:00 a.m. and 6:00 a.m. on June 5 looking for Joel Grimmette. Also between midnight and 7:00 a.m., Sergeant Yancey, Detectives Thacker, Buis and Davis attempted to execute the arrest warrant by going to Joel Grimmette's parent's house and to another relative's house but could not locate him. Sometime between 7:30 a.m. and 8:00 a.m. on June 5, Joel Grimmette entered Gwendolyn Grimmette's apartment, assaulted her, chased her into the street and fatally shot her.

Plaintiffs are Natasha Trethewey and Joel Grimmette, III, Gwendolyn Grimmette's children, and also the estate of Gwendolyn Grimmette. They have filed this action against: DeKalb County; F.D. Hand, Director of the DeKalb County Department of Public Safety; R.T. Burgess, Sr., Chief of the DeKalb County Bureau of Police Services; and five John Doe employees of DeKalb County. Plaintiffs allege that DeKalb County and DeKalb County officials had created a special relationship with Gwendolyn Grimmette whereby they are liable for failing to provide adequate police protection. Plaintiffs allege that Gwendolyn Grimmette relied to her detriment on the assurances of the DeKalb County Police that they would protect her and that she need not leave her apartment and stay with friends. Plaintiffs allege that a constitutional right to police protection was thereby established. Moreover, they allege that a custom or policy existed whereby domestic abuse cases receive less serious attention than other cases.

Defendants have moved for summary judgment on the grounds that no constitutional right to police protection exists in the absence of a special relationship between the police and the victim and that no such relationship exists in this instance. Defendants also contend that there is no custom or policy of treating domestic abuse in any manner different from other cases. Finally, Defendants argue that under *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), Plaintiffs have no § 1983 action since adequate state law remedies exist.

■ The initial inquiry is whether a constitutional right to police protection exists as, if there is no such right, Plaintiffs have no cause of action. In *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), the Supreme Court recognized that government officials are not liable under § 1983 for the failure to provide police protection unless some special relationship with the victim exists. Government officials may be held liable for the deprivation of due process arising from the failure to protect private citizens when a special relationship exists between the victim and the criminal or the victim and the officials. *Wright v. City of Ozark,* 715 F.2d 1513, 1515 (11th Cir.1983). In *Wright,* the plaintiff, a rape victim, brought a § 1983 action based on the defendant's alleged suppression of information regarding prior rapes in order to protect business activity. The action was dismissed as no special relationship was found to exist. Similarly, a constitutional right to police protection may exist when there has been "some showing that the victim, as distinguished from the public at large, faced a special danger." *Jones v. Phyfer,* 761 F.2d 642, 644–45 (11th Cir.1985).

The question whether the requisite special relationship or special danger existed here so as to give rise to a constitutional duty to protect is a fact-intensive one. The parties dispute whether or not the DeKalb County police promised to protect Gwendolyn Grimmette and made assurances which caused her to remain in her home the night of June 4 and early morning of June 5, 1985. Plaintiffs have submitted affidavits of friends of Gwendolyn Grimmette, Jim and Sherry Masaschi, her boyfriend, Johnny Thompson, and her daughter, Natasha Trethewey, stating that the DeKalb County police knew of the terroristic threats, assured Gwendolyn Grimmette that she would be protected, and that Gwendolyn Grimmette relied on these statements. Defendants argue that these affidavits are inadmissible hearsay. These statements do not fall squarely within any applicable exception to the hearsay rule. They do not constitute dying declarations. Although Plaintiffs argue that the statements estab-

lish Gwendolyn Grimmette's state of mind in terms of reasonably relying on police protection, there is no independent evidence to indicate that the police made such promises. Arguably, the statements might be construed as present sense impressions under Rule 803(1) of the Federal Rules of Evidence. However, given the court's analysis of *Monell v. New York Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), it is unnecessary to determine the issue whether a special relationship existed giving rise to a constitutional right to police protection.

Defendants argue that, as no DeKalb County custom or policy exists for handling domestic violence cases differently than other incidents of violence, suit is barred by *Monell*. As Plaintiffs have only brought suit against the individual Defendants in their official capacity, some custom or policy must also be established to hold these Defendants liable. *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

To support their claim that DeKalb County police treat domestic violence differently than other types of violence, Plaintiffs have offered the testimony of attorney John Sweet. In representing clients of the Council for Battered Women during the past five years, Mr. Sweet has handled between 50 and 100 domestic abuse cases in DeKalb County. In his deposition, he described DeKalb County police treatment of domestic violence as "primitive." Stating that he is also familiar with DeKalb County police's treatment of vehicular homicide, Mr. Sweet claims that the police do not make arrests in cases of domestic violence in the same manner as they do in other cases of violence.

Plaintiffs also cite the DeKalb County Task Force on Domestic Violence *Report on Domestic Violence in DeKalb County* to support their claim of custom or policy. The Task Force was authorized by the DeKalb County Board of Commissioners to investigate domestic violence in the county, to identify available resources and determine the need for additional resources, and to prepare a report on its findings. The Task Force established several subcommittees, including a Police Subcommittee and a Legal Subcommittee, to facilitate its investigation. The Task Force issued its report in February, 1986. The Police Subcommittee distributed questionnaires to DeKalb County and Decatur police and to battered women to ascertain the treatment of domestic violence by police. The Report specifically noted on page 12 that the questionnaire results are not statistically significant because of the manner in which the questionnaire was written or distributed. The Police Subcommittee first recommended that the County establish a crisis intervention project to further assist police in handling domestic violence. It noted that officers are already trained in handling domestic abuse. Second, the Police Subcommittee recommended that all police officers be provided with a list of available social service referrals. Third, it recommended that the Family Violence Act, which permits officers to swear out an arrest warrant based on probable cause to believe that violence occurred in the household, be emphasized by the County. The Legal Subcommittee investigation revealed that in 1984, 13% of arrest warrants issued were domestic violence cases and in 1985, 11% were domestic violence cases. The Legal Subcommittee found that the majority of cases were initiated by the victims themselves and that police officers often did not swear out an arrest warrant under the Family Violence Act because they themselves did not want to resolve the parties' conflicting claims, they knew the cases were rarely prosecuted or they did not want to be blamed after the parties reconciled and the victim denied the abuse. The *Report* recommended that the DeKalb Department of Public Safety should emphasize the use of the Family Violence Act in handling domestic abuse.

Defendants contest the use of Mr. Sweet's testimony and the Task Force *Report* to show DeKalb County custom or policy. First, they argue that Mr. Sweet has not been qualified as an expert and, therefore, his testimony only constitutes lay opinion. In his deposition, Mr. Sweet acknowledged that he has no familiarity

with DeKalb County police treatment of stranger-to-stranger violence in order to compare it to domestic violence. Rather, he states that his opinion is based on police treatment of vehicular homicides. Plaintiffs respond that Mr. Sweet's testimony is based on his factual knowledge rather than any expert qualifications.

Defendants also contest the use of the Task Force *Report* to establish DeKalb County custom or policy since they claim the *Report* is simply lay opinion. Plaintiffs respond that the *Report* is admissible as an exception to the hearsay rule under Rule 803(8)(C) of the Federal Rules of Evidence as a factual finding authorized by DeKalb County.

Under *Monell*, local governments can be liable under § 1983 when official policy or custom is "responsible for a deprivation of rights protected by the Constitution." *Monell*, 436 U.S. 658 at 690, 98 S.Ct. 2018 at 2036. In the instant case, the alleged unconstitutional deprivation is that the DeKalb County police failed to provide police protection once a special relationship with Gwendolyn Grimmette was established. The alleged unconstitutional act arises in the context of an alleged special relationship between Defendants and Gwendolyn Grimmette. Thus, any alleged custom or policy must exist with respect to similar special relationships. For without a special relationship, there is no constitutional right to police protection.

If the court were to assume, without deciding, that Mr. Sweet's testimony and the Task Force *Report* are admissible, nonetheless there has been no showing of a custom or policy with respect to the alleged constitutional violation. Mr. Sweet offers testimony that the DeKalb County police treat domestic abuse and vehicular homicides differently. The Task Force *Report* indicates that police officers do not make arrests under the Family Violence Act as frequently as they might legally do so. Neither source makes any specific claim with respect to the alleged constitutional violation at stake here, deprivation of the right to police protection which only arises in the instance of some special relationship

between the police and the victim. Accordingly, as Plaintiffs have failed to meet their burden under *Celotex Corporation v. Catrett,* 477 U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), summary judgment in favor of Defendants is warranted.

Defendants' motion for summary judgment is GRANTED.