The **ESTATE OF Devon Alexander MOR-GAN, Late of the City of Hampton, Virginia, Annetta M. Custis, Administratrix, et al., Plaintiffs,**

v.

The **MAYOR AND CITY COUNCIL OF HAMPTON, VIRGINIA, et al., Defendants.**

**Civil Action No. 4:95cv17.**

United States District Court, E.D. Virginia, Newport News Division.

March 22, 1996.

---

James Stephen Ellenson, Newport News, VA, Mark Alan Epstein, Mark A. Epstein Law Offices, Baltimore, MD, for Plaintiffs.

Stanley G. Barr, David Neal Anthony, Kaufman & Canoles, Norfolk, VA, David Patrick Corrigan, Elizabeth E. Stanulis Skilling, Harman, Claytor, Corrigan & Wellman, Richmond, VA, Charles Peter Tench, Newport News, VA, Gary Andrew Mills, Jones, Blechman, Woltz & Kelly, P.C., Newport News, VA, for Defendants.

## ORDER

MORGAN, District Judge.

On September 15, 1995, this Court conducted a hearing on the threshold issue of Plaintiff's Title 42 U.S.C. § 1983 constitutional claims against the state actor parties named as Defendants in this case. During the course of the hearing, Plaintiffs made a motion for leave to submit a second amended complaint on the issue of the alleged propriety of their 42 U.S.C. § 1983 claims against the defendants in this case. The Court granted this motion pursuant to Federal Rule of Civil Procedure 15(a), allowing Plaintiffs eleven days within which to file such an amended complaint or face dismissal of the complaint entirely. Plaintiffs filed their amended complaint on the eleventh day, Defendants renewed their motions to dismiss, and Plaintiffs voluntarily dismissed Defendant Randolf Tosh from their complaint on November 11, 1995.[1]

The Court heard oral argument on the City's motions to dismiss on December 20, 1995. At that time, it FOUND that Plaintiffs still failed to state a cause of action upon which relief could be granted, and thereafter it GRANTED the Motions to Dismiss. The Court also declined to exercise pendant jurisdiction over the remaining counts, and accordingly, it dismissed those counts for lack of subject matter jurisdiction. This opinion supplements that decision which went into effect the day of the hearing.

When considering a motion to dismiss, the Court considers a plaintiff's allega-

---

1. The remaining Defendants are collectively referred to in this order as the "City".

tions as true, and views the record as a whole in the light most favorable to it. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir.1991), *cert. denied*, 503 U.S. 936, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992). Despite this presumption in favor of the Plaintiffs in this case, the Court still FINDS that these Plaintiffs can prove no set of facts which would support their constitutional claims and entitle them to relief against the City. *See Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## *I. ANALYSIS*

Plaintiffs initiated this litigation after a fire in February, 1993 in the City of Hampton caused the death of two related minors. They claimed that this action on behalf of themselves and Plaintiff decedents arose under the Fourth and Fourteenth Amendments to the United States Constitution and under Title 42 U.S.C. § 1983. (*See* Compl. Count One, § I.) Jurisdiction was alleged under Title 28 U.S.C. §§ 1331, 1343—original jurisdiction due to a federal question under the Constitution and under federal civil rights laws.

 The thrust of Plaintiffs' original complaint was that the Mayor, the City Council, the Division of Fire and Rescue, Davis, Moore, and Cade ("City") breached Plaintiffs' constitutional rights by failing to respond and properly fight this fire. They raised their claims in the Second Amended Complaint under the Fifth and Fourteenth Amendments, and sought a remedy for the alleged constitutional deprivations via Title 42 U.S.C. § 1983. The Court alerted Plaintiffs at the initial hearing to the fact that they had failed thus far to allege any constitutional duty or federally protected rights upon which these Defendants may have infringed through their actions as described in the first complaint.[2] Plaintiffs attempted to rectify this flaw in their final amended complaint by including new allegations that the City of Hampton and its officials violated their rights via omission, rather than actual affirmative actions as they earlier maintained.[3] In essence, Plaintiffs' final amended complaint avers that the City violated various policies, customs, practices, or procedures and therefore impinged on Plaintiffs' due process rights to fire protection and services under the United States Constitution. Although reformed, this argument still suffers from the same fatal, threshold flaw: it fails to prove the existence of an underlying constitutional violation over which this Court would have jurisdiction under Section 1983.

### *A. Plaintiffs' Allegations*

Counts I and II allege that the City failed to supervise and train subordinates in its fire fighting units. Plaintiffs claim that this allegation establishes a violation of their constitutional rights as safeguarded by Title 42 U.S.C. § 1983. Counts III and IV also allege liability under Section 1983 and the Fifth and Fourteenth Amendments, however these claims rest on allegations of a failure to provide services. Counts V through VIII arise under Virginia state law and all hinge on the Court's pendant jurisdiction; as the Court found that the federal claims could not withstand a motion to dismiss, it need not discuss any potential viability of these dependant state law claims. (*See* Second Amended Compl.)

The threshold issue before the Court—beyond which the Court need not look in this case as Plaintiffs do not provide claims which overcome it—is whether the City labored under any constitutional duty to provide Plaintiffs fire protection or services or to provide such services in a satisfactory manner. As Plaintiffs' allegations essentially center on the City's failure to act properly

---

**2.** To successfully raise a Section 1983 claim, a plaintiff must preliminarily allege that conduct committed under color of state law harmed him such that his rights, privileges or immunities as secured by the Constitution or the laws of the United States were deprived. Section 1983 imposes no liability for violations of rights other than those secured by the Constitution or federal law. 42 U.S.C. § 1983.

**3.** The Court notes at the outset that Plaintiffs must allege actions by the City in order to implicate the Fifth Amendment. Hence, only the Due Process Clause of the Fourteenth Amendment could potentially yield a valid Section 1983 claim under these facts. *See Jackson v. Byrne*, 738 F.2d 1443, 1446 (7th Cir.1984).

once it accepted the burden to act, this ultimate question frames the issue before the Court as one of omission.

Plaintiffs originally urged that the City had failed its affirmative duty to respond properly to the fire in February, 1993. The Second Amended Complaint instead dances around the defects in this argument by couching its claims in language which seemingly establishes the special relationship necessary to require these duties of the City. Plaintiffs allege that the City failed in the performance of a series of duties leading up to the deaths of the minors, and in generally administering the task of firefighting which they had voluntarily taken up. The Court will briefly examine any constitutional duties Defendants may have had, then focus on Plaintiffs' argument for a special relationship between the parties such that a comparatively rare duty to protect may have been established.

### a. Constitutional Duty

■ Although Plaintiffs urge that the City failed to adequately act on their behalf,[4] thus depriving them of their constitutional rights protected by Section 1983, the affirmative duties created by the Due Process Clause do not set out any such duty for the City.[5] Instead, the Due Process Clause

is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to insure that those interests do not come to harm through other means.

DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 195–96, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989). Thus, for the clause to apply in the case of an affirmative act, that act would have to go beyond the affirmative uses of governmental powers permitted by substantive due process. The fact that a municipality chooses to provide fire protection does not lend itself to the conclusion that it is bound to provide a certain degree of competence in its services or else violate the constitution. Jackson v. Byrne, 738 F.2d 1443, 1446 (7th Cir.1984); Shortino v. Wheeler, 531 F.2d 938, 939 (8th Cir.1976).

■ It is undisputed that the Due Process Clause confers no affirmative right to governmental aid, even if such aid would contribute to the life, liberty, or property interests it guarantees against State deprivation. DeShaney 489 U.S. at 195–97, 109 S.Ct. at 1003; Jackson, 738 F.2d at 1446; Swader v. Commonwealth of Virginia, 743 F.Supp. 434, 437 (E.D.Va.1990) (concluding that the "Due Process Clause does not require the State to provide its citizens with particular protective services, even if those services are necessary to save a life."). A cursory examination shows that courts consistently hold that no affirmative constitutional duty exists for a municipality to provide fire protection. See e.g., Jackson, 738 F.2d at 1446 (7th Cir.1984) ("The Constitution creates no positive entitlement to fire protection."); Westbrook v. City of Jackson, 772 F.Supp. 932 (S.D.Miss.1991) (noting that there generally is no constitutional right to basic governmental services including fire protection); Reedy v. Mullins, 456 F.Supp. 955 (W.D.Va.1978) (holding that "there is no support for plaintiffs' broad claim that a mu-

---

4. These alleged omissions include claims such as the following: 1) the failure to provide adequate manpower and equipment; 2) the failure to coordinate available manpower and equipment; 3) the failure to adequately train, supervise and discipline subordinates; 4) the failure to establish an interior section command; 5) the failure to adequately fight the fire; 6) the failure to effectuate reasonable attempts to fight the fire and to speedily rescue the minors; 7) the failure to implement the findings of the study which examined the allocation of resources and which indicated a need to hire more firefighters; and 8) the failure to allocate the necessary resources as recommended by the study. (Second Amended Compl. at ¶¶ 23–26.)

5. "Not every death that results from the state's failure to act is a 'depriv[ation]' under the Fourteenth Amendment. Before an omission that leads to a death is actionable under the Fourteenth Amendment and Section 1983, the Constitution must recognize an underlying duty on the part of the state to act." Jackson, 738 F.2d at 1446.

nicipality is constitutionally required to provide adequate fire protection, even though the municipality has undertaken such a service.") (citing *Shortino,* 531 F.2d 938).

■ Plaintiffs argue however that the *Rochin v. California* "shocks the conscience" standard should be applied to adjudge the City's conduct so unreasonable as to warrant liability. 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). When this test is applied to find perverse and abusive acts of governmental power which "shock the conscience," certain substantive due process violations may arise. *Id.* However, the Court notes that unless the government conduct complained of is "sufficiently severe, sufficiently disproportionate to the need presented and so deliberate and unjustified a misuse of [authority] ... [it does not] transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights." *Shillingford v. Holmes,* 634 F.2d 263, 266 (5th Cir.1981). *DeShaney* specifically rejected the notion that because the defendant in that case failed to carry out its affirmative duty that it so shocked the conscience as to establish a substantive due process violation under Section 1983. 489 U.S. at 197–98, 109 S.Ct. at 1004; *see also Weller v. Department of Social Services for City of Baltimore,* 901 F.2d 387 (4th Cir.1990). By analogy in this case, even though it is alleged that the City failed to effectively follow certain policies and procedures and to implement plans or allocate resources in the manner Plaintiffs desired for their protection, such a failure is not sufficient to meet the "shocks the conscience" standard necessary to establish a due process violation.

As the Fourth Circuit concluded in *Pinder v. Johnson,* "We cannot simply ignore the lack of any clearly established constitutional duty to protect and the concomitant immunity from civil liability." 54 F.3d 1169, 1179 (4th Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 530, 133 L.Ed.2d 436 (1995). Accordingly, the Court FINDS that as there is no constitutional duty for the municipality to provide adequate fire services—even after having undertaken to do so—the City's actions or failures to act do not rise to the

"shock the conscience" level so to create such a violation.

### b. Special Relationship Exception

■ Plaintiffs' final amended complaint and accompanying briefs appear to argue for liability premised upon the alleged "special relationship" the City had with Plaintiffs. They assert that their connection to the City was such that it obligated the City to act to protect them, even though without such a relationship Plaintiffs would have had no action against Defendants for their alleged omissions.

As a preliminary matter, the Court notes that *DeShaney* rejected the argument that a State omission could constitute a substantive due process violation. 489 U.S. at 196–98, 109 S.Ct. at 1004 (finding that such a due process violation would not result, even if it shocked the conscience). Plaintiffs urge that the exception to this rule applies here, in that a "special relationship" owing to a custodial affiliation arose between the City and Plaintiffs. The Fourth Circuit has found that this "special relationship" exception—which dictates that the government indeed would owe an affirmative duty of protection—is triggered only in custodial situations where a claimant is incarcerated, arrested, or otherwise somehow restrained from protecting himself. *Pinder,* 54 F.3d at 1175.

Plaintiffs attempt to fashion a scenario in which they had such a "special custodial relationship" with Defendants. They assert that the City somehow prevented them from fighting the fire themselves by sequestering them in so-called "protective custody outside the house." (Pls.' Brief in Opp. at 7.) Plaintiffs propose that this "custody" was tantamount to the involuntary commitment which obligates the states to care for those specified individuals who, by reason of the deprivation of liberty to care for themselves, need the state to tend to them. *See e.g., Estelle v. Gamble,* 429 U.S. 97, 103–04, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) (holding that under the Eighth Amendment the State must take on the affirmative duties of care and protection of incarcerated individuals); *Youngberg v. Romeo,* 457 U.S. 307, 314–25, 102 S.Ct. 2452, 2457–63, 73 L.Ed.2d 28 (1982)

(holding that the State may be obligated to provide adequate food, shelter, clothing, and medical care to the involuntarily committed under the Due Process Clause).

■ The line of cases on which Plaintiffs rely is one that only stands for the proposition that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199–200, 109 S.Ct. at 1005 (citing *Youngberg*, 457 U.S. at 317, 102 S.Ct. at 2458–59); *Swader*, 743 F.Supp. at 437. The Court cannot agree that merely keeping Plaintiffs from entering a burning house rises to the level of custody necessary to obligate the City to act which is found in other cases. *See e.g. Pinder*, 54 F.3d 1169. "Some sort of confinement of the injured party—incarceration, institutionalization, or the like—is needed to trigger the affirmative duty." *Id.* at 1175. The City did not act to affirmatively create the dangerous condition, and hence, this conduct is not such an affirmative exercise of State power that the Court could find it "so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs ... [and] it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." *DeShaney*, 489 U.S. at 200, 109 S.Ct. at 1005 (citing *Estelle*, 429 U.S. at 103–04, 97 S.Ct. at 290–91; *Youngberg*, 457 U.S. at 315–16, 102 S.Ct. at 2457–58). Consequently, the Court cannot find that the situation alleged by Plaintiffs creates the kind of special custodial relationship necessary to exempt the City from the purview of the rule that they owed no constitutional obligation to Plaintiffs to act. *See Pinder*, 54 F.3d at 1175 ("This Court [the Fourth Circuit] has consistently read *DeShaney* to require a custodial context before any affirmative duty can arise under the Due Process Clause.") (citing *Rowland v. Perry*, 41 F.3d

167, 172–73 (4th Cir.1994); *Piechowicz v. United States*, 885 F.2d 1207, 1215 (4th Cir. 1989)); *Jackson*, 738 F.2d at 1447 (citing *Fox v. Custis*, 712 F.2d 84, 88 (4th Cir.1983)).

■ The harm in this case was inflicted by the fire, not by any action or inaction on the part of the City, as Plaintiffs would argue. In order to have been under an affirmative duty to act to prevent harm to Plaintiffs from the fire, the City would need to have actually created the fire itself, not to have created a situation in which Plaintiffs were restrained from fighting the fire. *See Pinder*, 54 F.3d at 1177 ("When the state itself creates the dangerous situation that resulted in a victim's injury, the absence of a custodial relationship may not be dispositive."); *DeShaney*, 489 U.S. at 203, 109 S.Ct. at 1007. This set of facts simply does not exist, nor do Plaintiffs allege them; thus, Plaintiffs' omissions liability theory must fall.[6]

> Our analysis would no doubt be different if government officials set the fire or placed forces in motion which ignited the fire that claimed the lives of the ... children. Cf. *Martinez v. California*, 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980). Government involvement in the setting of the fire, however, has never been part of plaintiffs' theory of the case.

*Jackson*, 738 F.2d at 1446. In fact, however, the City did not set the fire, and for this Court to hold the City's acts or omissions leading up to and including its attempt to fight the fire to constitute a violation of constitutional proportions "would open the way for scrutiny by the federal courts of virtually every municipal decision to reallocate protective resources. Neither the Fourteenth Amendment nor Section 1983 was meant to give the federal courts such a role." *Jackson*, 738 F.2d at 1447. Were the Court to recognize a broad constitutional right to affirmative protection by the state, it "would be the first step down the slippery slope of

---

**6.** For a sampling of parallel cases finding that insufficient control and a lack of special relationship preclude recovery under constitutional theories, *see Pinder*, 54 F.3d at 1174–77; *Estate of Gilmore v. Buckley*, 787 F.2d 714, 722 (1st Cir.), *cert. denied*, 479 U.S. 882, 107 S.Ct. 270, 93 L.Ed.2d 247 (1986); *Jackson*, 738 F.2d at 1446; *Wright v. Ozark*, 715 F.2d 1513 (11th Cir.1983); *Williamson v. City of Virginia Beach, Va.*, 786 F.Supp. 1238 (E.D.Va.1992) (Prince, J.), *aff'd*, 991 F.2d 793 (4th Cir.1993); *Westbrook*, 772 F.Supp. 932; *Shortino*, 531 F.2d at 939.

liability. Such a right potentially would be implicated in nearly every instance where a private actor inflicts injuries that the state could have prevented." *Pinder,* 54 F.3d at 1178. Other Circuits have even cited the very situation argued by Plaintiffs before this Court—that "Firemen who have been alerted to a victim's peril but fail to take effective action" should be held constitutionally liable—as potentially bringing "[e]normous economic consequences ... from the reading of the fourteenth amendment that plaintiff here urges." *Estate of Gilmore v. Buckley,* 787 F.2d 714, 722–23 (1st Cir.), *cert. denied,* 479 U.S. 882, 107 S.Ct. 270, 93 L.Ed.2d 247 (1986). Obligating the state to protect private citizens in such a manner transcends the bounds of their duties and renders them "constitutional guarantors of the conduct of others" and of the public's general personal safety. *See Pinder,* 54 F.3d at 1178. "Such a system would engender a variety of perverse incentives." *Id.*

 In this case, even accepting Plaintiffs' allegations as true, their facts do not demonstrate a "special relationship" between the City and Plaintiffs. The most these facts legitimately comprise is a situation where the City failed to rescue Plaintiffs; the City did not "create the danger" in which Plaintiffs found themselves. Plaintiffs "may have a state law claim for gross negligence against the defendants, but these facts do not give rise to a constitutional tort under Section 1983." *Gazette v. City of Pontiac,* 41 F.3d 1061, 1065 (6th Cir.1994). Thus, absent a "special relationship," the Court cannot find that Plaintiffs have met the threshold requirement of alleging a constitutional duty the City could have violated and thus FINDS that they have failed to allege a claim upon which relief could be granted. Even if the City was negligent in providing fire services which they voluntarily undertook—the claim Plaintiffs' assertions naturally appear to create—such liability is still not a constitutional duty and a remedy should be sought in state court under traditional tort law principles. *DeShaney,* 489 U.S. at 201–02, 109 S.Ct. at 1006 [7]; *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *Ellsworth,* 774 F.2d 182.

 As the Court FINDS that Plaintiffs' complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6), it need not examine the potential defense of qualified good faith immunity for the City.[8]

## II. CONCLUSION

Accordingly, the Court DISMISSES Counts I, II, III, IV of the Second Amended Complaint for failure to state a claim under which relief may be granted, and DECLINES to exercise pendant jurisdiction over Counts V through VIII, as they pertain to matters within state jurisdiction.[9]

The Clerk is **REQUESTED** to mail a copy of this Order to all counsel of record.

It is so **ORDERED.**

---

7. The Supreme Court in *DeShaney* clearly expounded this principle:

> It may be well that, by voluntarily undertaking to protect [plaintiff] against a danger it concededly played no part in creating, the State acquired a duty under state tort law to provide him with adequate protection against that danger.... But the claim here is based on the Due Process Clause of the Fourteenth Amendment, which, as we have said many time, does not transform every tort committed by a state actor into a constitutional violation.

*DeShaney,* 489 U.S. at 201–02, 109 S.Ct. at 1006.

8. *See Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). This qualified good faith immunity from personal liability applies in Section 1983 actions where executive officers acted with good faith on reasonable grounds. It exists to protect the exercise of discretion by municipal officials. *See Reedy v. Mullins,* 456 F.Supp. 955, 958 (W.D.Va.1978).

9. Counts VII and VIII relate to Defendant Tosh whom Plaintiffs voluntarily dismissed with prejudice from this lawsuit on November 1, 1995.