**Helen L. CRENSHAW, Plaintiff,**

v.

**CITY OF DEFUNIAK SPRINGS, et al., Defendants.**

No. 94–30072–RV.

United States District Court,
N.D. Florida,
Pensacola Division.

May 12, 1995.

Stephanie A. Taylor, McKenzie & Soloway, P.A., Pensacola, FL, for plaintiff Helen L. Crenshaw.

Helen L. Crenshaw, DeFuniak Springs, FL, pro se.

D. Lloyd Monroe, IV, Cooper, Coppins & Monroe, Tallahassee, FL, for defendants City of Defuniak Springs, FL, Mike Stanley.

## ORDER

VINSON, District Judge.

Pending is the defendant's motion for summary judgment. (doc. 35) Also pending are numerous post-complaint motions by the plaintiff, (doc. 64, 69, 72, 74), and the defendant's motion to impose costs, expenses, and attorney's fees. (doc. 66)

## I. BACKGROUND

This is a civil rights action brought pursuant to Title 42, United States Code, Sections 1983 and 1981. The plaintiff, Helen L. Crenshaw, alleges various acts of misconduct on the part of defendant Mike Standley, City Manager for the City of DeFuniak Springs, Florida, and defendant City of DeFuniak Springs. Except as noted, the following facts are not in dispute.

The plaintiff, who is black, owns property located near the northeast corner of what is now the 19th Street cul-de-sac in DeFuniak Springs, just north of State Highway 90. At one time, 19th Street continued past the point where the cul-de-sac is now located, and joined 20th Street. This continuation of 19th Street crossed land owned by Vernon Cosson, Ronald Bryan, and Aaron Strickland, and was located on an easement held by the city. In 1986, Vernon Cosson applied to the city council for abandonment of the easement, and the city council officially abandoned the easement by resolution on February 9, 1987. (attachment to doc. 38, ex. D) The city retained a fifteen-foot utility easement through the center of the abandoned street, and was instructed by the city council not to actually abandon the easement until Wabash Avenue was constructed. Wabash Avenue was intended to provide access to property affected by the abandonment of the portion of 19th Street, and adjoins the plaintiff's property.

In July of 1989, the city actually abandoned its easement, and ceased to provide curbside garbage collection service on the abandoned portion of 19th Street. The plaintiff's property adjoins the abandoned street, and the plaintiff had previously had her garbage picked up at a location on the abandoned street. The plaintiff contacted defendant Standley and asked that garbage service be resumed. According to the plaintiff, Standley refused to reinstate service along the abandoned street, and made derogatory and racial remarks to her. The defendants maintain that the plaintiff was informed that because the city had abandoned its easement, her garbage could no longer be picked up at the 19th Street location, but could be picked up at two other locations where either the

cul-de-sac or Wabash Avenue provide access to her property. (Crenshaw dep., ex. 3) One of those locations is on the cul-de-sac immediately adjacent to where plaintiff had placed her garbage in the past, and where it now remains uncollected. It is undisputed that the plaintiff has continued to pay for garbage collection service. Defendant Standley made a statement on the local radio station in the City of DeFuniak Springs that the plaintiff's garbage would not be collected until she placed it at the proper location.

The plaintiff had traditionally used 19th Street to gain access to and from her property, and continued to do so after the city's abandonment of the easement. Ronald Bryan, who is white, sought to prevent the plaintiff from continuing to use the abandoned portion of 19th Street, which crossed over property owned by his daughter, Sharon Bryan. The plaintiff obtained a temporary order from the Circuit Court in and for Walton County, Florida, on March 1, 1990, which found that the plaintiff had a way of necessity easement and/or prescriptive easement running over the strip of land abandoned by the city, and restrained the Bryans from obstructing the easement. According to the plaintiff, the city police harassed her and refused to prevent Bryan from interfering with her use of the abandoned street.

The amended complaint alleges that the defendants denied the plaintiff equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution, caused her to suffer the badges and incidents of slavery in violation of the Thirteenth Amendment, and violated Title 42, United States Code, Sections 1981 and 1983 by abandoning 19th Street and discontinuing garbage collection services along 19th street. The defendants in their motion for summary judgment contend that the plaintiff has failed to show the necessary discriminatory impact and discriminatory intent, and has otherwise failed to demonstrate a factual basis for her claims. Defendant Standley urges that he is entitled to qualified immunity. These arguments will be considered in turn. The plaintiff has filed numerous motions since the amended complaint, which will also be con-

sidered.[1] Finally, the defendants have moved for imposition of costs, expenses, and attorney's fees on the plaintiff.

## II. *ANALYSIS*

### A. *Summary Judgment Standard*

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. Summary judgment is improper "[i]f a reasonable fact finder could draw more than one inference from the facts, and that inference creates a genuine issue of material fact." *Cornelius v. Highland Lake*, 880 F.2d 348, 351 (11th Cir. 1989), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990).

The court may not weigh evidence to resolve a factual dispute; if a genuine issue of material fact is present, the court must deny summary judgment. *Hutcherson v. Progressive Corp.*, 984 F.2d 1152, 1155 (11th Cir. 1993). Likewise, if reasonable minds could differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir.1992).

On a summary judgment motion, the record and all reasonable inferences that can be drawn from it must be viewed in the light most favorable to the non-moving party. *McCabe v. Sharrett*, 12 F.3d 1558, 1560 (11th Cir.1994). Furthermore, the court must consider the entire record in the case, and not just those pieces of evidence which have been singled out for attention by the parties. *See Clinkscales v. Chevron USA, Inc.*, 831 F.2d 1565, 1570 (11th Cir.1987).

In this case, the plaintiff is proceeding *pro se*, so I will not hold her to strict accountability of compliance with the rules of procedure, and will construe the complaint more liberally than I would formal pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 175, 66 L.Ed.2d 163 (1980). However, although the plaintiff's complaint is entitled to a liberal interpretation, the plaintiff must still meet the essential burden of establishing that there is a genuine issue as to a fact material to his case. *Brown v. Crawford*, 906 F.2d 667, 669–70 (11th Cir.1990).

### B. *Section 1983*

To prevail in a civil rights action under Title 42, United States Code, Section 1983, a plaintiff must show that the defendant, acting under color of state law, deprived her of a right secured by the Constitution or laws of the United States.[2] *Bannum, Inc. v. City of Ft. Lauderdale*, 901 F.2d 989, 997 (11th Cir. 1990). Section 1983 itself creates no substantive rights; rather, it provides a remedy for deprivations of federal rights established elsewhere. *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir.1989); *Wideman v. Shallowford Community Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir.1987). Thus, the plaintiff must first identify specific constitutional or statutory rights of which she has been deprived.

### (1) Discrimination in Supply of City Services

The amended complaint can be construed as alleging racial discrimination in the supply of city services. Once a city decides to provide services, it must do so in a racially nondiscriminatory manner. *United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach*, 493 F.2d 799, 808 (5th Cir.1974). *See Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). In such cases, the plaintiff must show both dis-

1. On April 27, 1995, a hearing on all pending motions was held, during which all parties were given an opportunity to present evidence concerning the defendants' motion for summary judgment and the plaintiff's various post-complaint motions.

2. The plaintiff's claims against defendant City of DeFuniak Springs and defendant Standley in his official capacity will be addressed as one claim, since a suit against a municipality and a suit against a municipal official acting in his official capacity are the same. *Brandon v. Holt*, 469 U.S. 464, 471–72, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985); *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978).

criminatory impact and discriminatory intent. *Ammons v. Dade City, Fla.*, 783 F.2d 982, 984 (11th Cir.1986). *See Alexander v. Chicago Park District*, 709 F.2d 463, 467–68 (7th Cir.1983); *Baugh v. City of Milwaukee*, 823 F.Supp. 1452, 1459 (E.D.Wis.1993), *aff'd*, 41 F.3d 1510 (7th Cir.1994). If the plaintiff can show discriminatory impact, the plaintiff must then show "a correlation between municipal service disparities and racially tainted purposiveness to mandate a finding of discriminatory intent." *Dowdell v. City of Apopka*, 698 F.2d 1181, 1185–86 (11th Cir. 1983). Here, the plaintiff alleges that the defendants discriminated against her by discontinuing garbage collection service along 19th Street.[3] It is undisputed that the City of DeFuniak Springs was requested to abandon the portion of 19th Street adjoining the plaintiff's house, and did so by resolution of the city council on February 9, 1987. (attachment to doc. 38, ex. D) Therefore, the portion of 19th Street upon which the city formerly collected the plaintiff's garbage is now private property. The city code does not allow the city to collect garbage on private property, except that if someone is handicapped or elderly, the city may enter that person's *own* property to collect their garbage. (attachment to doc. 38, ex. F) Although the plaintiff argues that she is handicapped, the exception does not apply in her case, since the city would have to enter or cross the private property of other individuals to collect the plaintiff's garbage in the traditional location.

The plaintiff also argues that because the city maintains a utilities easement through the abandoned portion of 19th Street, the city is entitled to cross private property to collect her garbage. While the resolution of the city council states that the city "retains a fifteen foot easement through the center of the abandoned street for utility purposes," (attachment to doc. 38, ex. D), such an easement does not allow the city ingress and egress to the plaintiff's property across the private property of others. Utility purposes include water, sewer, and perhaps telephone and electrical (if provided by the city), but not garbage collection vehicles. Also, while the state court's temporary order of March 1, 1990, recognizes that the plaintiff may have a way of necessity easement and/or prescriptive easement across the Bryan property, if no other viable access exists, such an easement as recognized is personal to the plaintiff, and does not entitle the City of DeFuniak Springs to enter the Bryan property to collect the plaintiff's garbage at the 19th Street location. It is apparent that neither the city code, the plaintiff's temporary order, or the resolution of abandonment gave the city the right to cross private property to collect the plaintiff's garbage at the 19th Street location.

As evidence of discriminatory intent, the plaintiff states that defendant Standley and other city officials made derogatory racial remarks when she asked that garbage collection service be resumed at the 19th Street location. For purposes of the pending motion, I assume that those statements were, in fact, made. However, verbal threats or verbal harassment, even if racial in nature, are not constitutional violations cognizable under Section 1983. *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir.1992); *Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th Cir.1987); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir.1979). The plaintiff has not alleged or demonstrated any legal deficiency in the vacation or abandonment of the portion of 19th Street in question. Therefore, for purposes of this motion, the city's action in abandoning or vacating the street must be accepted as completely legal and proper. Nor has the plaintiff alleged or demonstrated that the initial decision by the city to abandon the street was motivated by discriminatory intent. Thus, the only conduct in question is the non-collection of the garbage. The city is correct in its position that it cannot cross the private property of others to get to the plaintiff's property where she deposits her garbage. Even assuming that non-collection constituted a discriminatory impact,[4] the

---

**3.** As noted, the defendant has designated two other locations at the plaintiff's property for garbage collection, although the plaintiff disputes that she received notice of such designation.

**4.** In her deposition, the plaintiff testified that she was not aware of any other blacks within the City of DeFuniak Springs who had trouble with city garbage collection. (Crenshaw dep., p. 96–97)

plaintiff has failed to show facts demonstrating discriminatory intent on the part of the defendants in refusing to collect her garbage on the portion of 19th Street abandoned by the city.

■■■ The plaintiff's claim for discrimination in the supply of city services also fails for another reason. When suing municipalities and city officials in their official capacity, a plaintiff must show that " 'action pursuant to official municipal policy of some nature caused a constitutional tort.' " *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 729, 109 S.Ct. 2702, 2719, 105 L.Ed.2d 598 (1989) (citations omitted). Municipal liability may be based upon:

> (1) an action taken or policy made by an official responsible for making final policy in that area of the city's business;[5] or (2) a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker.

*Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir.1994). A municipality may not be held liable under Section 1983 simply on the basis of respondeat superior. *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479 (11th Cir.1991).

To establish the existence of a practice or custom:

> it is generally necessary to show a persistent and widespread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality. Normally random acts or isolated incidents are insufficient to establish a custom or policy.

*Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir.1986). "In other words, a longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991). In order for the plaintiff to recover under this theory, the plaintiff must show that the practice or custom was the "moving force" behind the constitutional violation.

*Fundiller v. City of Cooper City*, 777 F.2d 1436, 1442 (11th Cir.1985). "[N]ot only must there be some degree of 'fault' on the part of the municipality in establishing or tolerating the custom or policy, but there also must exist a causal link between the custom or policy and the deprivation." *Id.* Proof of a single incident of unconstitutional activity is not sufficient to impose liability. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791, 804 (1985) (plurality opinion).

The plaintiff has not shown the existence of a policy or custom on the part of the city of discrimination against blacks in the supply of city services. To the contrary, the city has produced evidence of a nondiscriminatory explanation for its refusal to provide garbage collection services at the 19th Street location. The plaintiff has also not shown conduct on the part of a city official having final policymaking authority that rises to the level of a constitutional tort. Accordingly, the defendants are entitled to summary judgment on the plaintiff's claim that the defendants violated Section 1983 by discriminating in the supply of city services.

**(2) Selective Enforcement of Laws**

The plaintiff has claimed in several of her post-complaint motions that the defendants have discriminated against her by failing to prevent her neighbors, the Bryans, from interfering with her use of the abandoned portion of 19th Street. (doc. 69, 74) The amended complaint alleges that the Bryans "have threatened to interfere with plaintiff's easement by preventing plaintiff and her family from having access to her property by blocking access to the ingress/egress path...." (doc. 11). The plaintiff complains that the city police of DeFuniak Police refuse to prevent Bryan from harassing her and blocking her use of the abandoned street.

■■■ Although there is no general constitutional right to police protection, the state may not discriminate in providing such protection. *Watson v. City of Kansas City, Kansas*, 857 F.2d 690, 695 (10th Cir.1988); *Wright v. City of Ozark*, 715 F.2d 1513, 1516

---

5. Whether a particular official has final policymaking authority is a question of state law. *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 737,

109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989). *See Free v. Granger*, 887 F.2d 1552, 1557 (11th Cir.1989).

(11th Cir.1983). *See DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 197 n. 3, 109 S.Ct. 998, 1004 n. 3, 103 L.Ed.2d 249 (1989). To prevail on such a claim, the plaintiff must show intentional or purposeful discrimination. *Wright v. City of Ozark,* 715 F.2d at 1516; *Gamza v. Aguirre,* 619 F.2d 449, 453–54 (5th Cir.1980).

■ Here, the plaintiff alleges that city police failed to prevent Ronald Bryan from interfering with her use of the abandoned street, and failed to arrest or prosecute Bryan, despite his harassment of her. The record demonstrates that the plaintiff and Bryan have had a contentious relationship since the city abandoned the portion of 19th Street in question. Each has had the other arrested at least once on charges arising out of the dispute over the street, which crosses over property owned by Bryan's daughter. (attachment to doc. 64; attachment to doc. 69) In addition, the plaintiff has filed complaints against three city police officers. (attachment to doc. 82) While the plaintiff alleges in several of her motions that the city police were rude to her and harassed her, citizens do not have a constitutional right to courteous treatment by the police. As discussed earlier, verbal harassment and abusive language, while "unprofessional and inexcusable," are simply not sufficient to state a constitutional claim under Section 1983. *Patton v. Przybylski,* 822 F.2d 697, 700 (7th Cir.1987); *Slagel v. Shell Oil Refinery,* 811 F.Supp. 378, 382 (C.D.Ill.1993), *aff'd,* 23 F.3d 410 (7th Cir.1994). *See Bacon v. Patera,* 772 F.2d 259, 264–65 (6th Cir.1985). The failure of city police to arrest or prosecute Bryan also does not constitute a violation of Section 1983:

> The Constitution is a charter of negative liberties; it tells the state to let people alone; it does not require the federal government or the state to provide services, even so elementary a service as maintaining law and order.

*Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982). *See Wright v. City of Ozark,* 715 F.2d 1513, 1516 (11th Cir.1983). The plaintiff has simply not produced any facts tending to show that any of the alleged actions taken by the police were motivated by an intent to discriminate against her on the basis of her race. In addition, the plaintiff has not shown the existence of a city policy or custom of selective enforcement of the laws based on race, as is required to establish municipal liability under Section 1983. *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 729, 109 S.Ct. 2702, 2719, 105 L.Ed.2d 598 (1989); *Church v. City of Huntsville,* 30 F.3d 1332, 1343 (11th Cir.1994).

## C. Section 1981

■ The plaintiff alleges that the defendants deprived her of rights guaranteed by Title 42, United States Code, Section 1981.[6] The Supreme Court of the United States has held that "the exclusive federal damages remedy for the violation of rights guaranteed by § 1981 when the claim is pressed against a state actor" is a Section 1983 action. *Jett v. Dallas Ind. School Dist.,* 491 U.S. 701, 735, 109 S.Ct. 2702, 2722, 105 L.Ed.2d 598, 627 (1989). *See Cerrato v. San Francisco Community College Dist.,* 26 F.3d 968, 972 (9th Cir.1994); *Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1481 (11th Cir.1991). Thus, the exclusive federal remedy for an alleged violation of the plaintiff's section 1981 rights is a section 1983 action. To the extent that the plaintiff seeks injunctive relief under Section 1981, such relief would be duplicative of equitable relief available under Section 1983. *Brown v. City of Fort Lauderdale, supra,* 923 F.2d at 1481. *See Busby v. City of Orlando,* 931 F.2d 764, 771 n. 6 (11th Cir. 1991). Since the defendants in this case are state actors and the complaint includes a Section 1983 claim covering the same factual matters, the defendants are entitled to summary judgment on the plaintiff's Section 1981 claim.

---

**6.** Section 1981 provides that:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981 (1988).

## D. *Thirteenth Amendment*

The plaintiff alleges that the conduct of the defendants caused her to suffer the badges and incidents of slavery in violation of the Thirteenth Amendment to the United States Constitution. While neither the Supreme Court of the United States or the Courts of Appeal have decided the extent to which a direct cause of action exists under the Thirteenth Amendment, district courts have uniformly held that the amendment does not reach forms of discrimination other than slavery or involuntary servitude.[7] *See Holland v. Bd. of Trustees of the University of the District of Columbia,* 794 F.Supp. 420, 424 (D.D.C.1992); *Roberts v. Walmart Stores, Inc.,* 736 F.Supp. 1527, 1528 (E.D.Mo. 1990); *Matthews v. Freedman,* 128 F.R.D. 194, 201 & n. 2 (E.D.Pa.1989), *aff'd,* 919 F.2d 133 (3rd Cir.1990) (collecting cases); *Baker v. McDonald's Corp.,* 686 F.Supp. 1474, 1480 n. 12 (S.D.Fla.1987); *Westray v. Porthole, Inc.,* 586 F.Supp. 834 (D.C.Md.1984). Instead, plaintiffs must confine themselves to remedies such as Sections 1981 and 1982, which were adopted pursuant to Section 2 of the Thirteenth Amendment.

 The defendants assume for purposes of their motion for summary judgment that the plaintiff may bring a direct claim under the Thirteenth Amendment, and contend that the Supreme Court's decision in *City of Memphis v. Greene,* 451 U.S. 100, 101 S.Ct. 1584, 67 L.Ed.2d 769 (1981), is dispositive of the plaintiff's claim. In *City of Memphis,* the Supreme Court held that the city's closing of a street, which inconvenienced members of a predominantly black neighborhood, did not violate either the Thirteenth Amendment or Title 42, United States Code, Section 1982. *City of Memphis v. Greene,* 451 U.S. at 100, 101 S.Ct. at 1584. The Court reasoned that the evidence failed to show that the street closing would prevent blacks from exercising the same rights as whites, that it depreciated the value of blacks' property, or that it severely restricted access to black homes. *Id.* Here, it is undisputed that the City of DeFuniak Springs did not abandon the portion of 19th Street adjoining the plaintiff's property until Wabash Avenue was completed, which also adjoins the plaintiff's property.[8] The plaintiff has presented no evidence showing that the closing of 19th Street unduly restricts access to her residence, or has resulted in depreciation of the value of her property. Assuming that the plaintiff may bring a direct claim under the Thirteenth Amendment, the defendant is entitled to summary judgment on the plaintiff's claim, since the plaintiff has shown no facts indicating that the closing of 19th Street has caused her to suffer the badges and incidents of slavery in violation of the Thirteenth Amendment.

 While the plaintiff has not alleged a violation of Section 1982 in her amended complaint, the defendants consider her Thirteenth Amendment claim in the context of the enabling legislation of Section 1982, and I will briefly address this aspect of the case. Section 1982 guarantees black citizens the right to use property on an equal basis with white citizens. *City of Memphis v. Greene,* 451 U.S. 100, 101 S.Ct. 1584, 67 L.Ed.2d 769 (1981). *See Evans v. Tubbe,* 657 F.2d 661, 662 n. 2 (5th Cir. Unit A 1981). Plaintiffs pursuing a Section 1982 claim must demonstrate discriminatory intent. *Jackson v. Okaloosa County, Fla.,* 21 F.3d 1531, 1543

---

**7.** All Circuit Court of Appeals cases addressing direct claims under the Thirteenth Amendment concern forced labor through physical or legal coercion, which directly implicates the prohibition against involuntary servitude. *See, e.g., Steirer by Steirer v. Bethlehem Area School District,* 987 F.2d 989, 998–99 (3rd Cir.1993) (mandatory community service program in public high school); *Jobson v. Henne,* 355 F.2d 129, 131–32 (2d Cir.1966) (requiring labor of patients in mental institution).

**8.** Facts in the record suggest that the plaintiff cannot use Wabash Avenue to access 20th Street because of her refusal to move a fence which crosses Wabash Avenue. It is undisputed that were the fence removed, Wabash Avenue would provide ingress and egress to the plaintiff's property, at least to the extent it connects with 20th Street. Plaintiff maintains that she cannot use Wabash Avenue in the opposite direction because it is low and subject to standing water. The defendants allege that the city also offered to pave a driveway from the plaintiff's property to the 19th Street cul-de-sac adjoining her property. The plaintiff admits that she heard about the offer second-hand, but disputes that she was ever approached by the city concerning the driveway.

(11th Cir.1994); *Asbury v. Brougham,* 866 F.2d 1276 (1989); *Hamilton v. Svatik,* 779 F.2d 383, 387 (7th Cir.1985). The plaintiff has neither alleged nor produced evidence that the city's decision to close 19th Street resulted from an intent to deny her the use of her property on an equal basis with white citizens. *See, e.g., Lake Lucerne Civic Ass'n v. Dolphin Stadium Corp.,* 801 F.Supp. 684, 700 (S.D.Fla.1992).

### E. *Qualified Immunity*

■■■ Defendant Standley maintains that he is entitled to qualified immunity, as he did not violate clearly established constitutional law. I agree. To the extent that Standley is sued for damages in his individual capacity, he is entitled to raise the defense of qualified immunity. *Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114, 122 (1985). Government officials performing discretionary functions generally are shielded from liability for civil damages, and the qualified immunity defense will fail only if an official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982). *See Harris v. Coweta County,* 21 F.3d 388, 390 (11th Cir.1994). The test is one of objective reasonableness, without regard to whether the government official involved acted in good faith. *Courson v. McMillian,* 939 F.2d 1479, 1487 (11th Cir.1991). "[W]e look to whether a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." *Hardin v. Hayes,* 957 F.2d 845, 848 (11th Cir.1992).

The Eleventh Circuit has adopted a two-part test for conducting the objective legal reasonableness inquiry. First, the defendant public official must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.

Here, all allegations concerning defendant Standley concern his actions while performing his duties as city manager of the City of DeFuniak Springs.[9] Second, the burden shifts to the plaintiff to prove the official's lack of good faith. This burden is met by proof demonstrating that the defendant public official's actions violated clearly established constitutional law. *McCoy v. Webster,* 47 F.3d 404, 407 (11th Cir.1995); *Sammons v. Taylor,* 967 F.2d 1533, 1539 (11th Cir. 1992); *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983).

■■■ Two questions of law must be decided in completing the second part of the qualified immunity analysis: First, the court must ascertain whether the legal norm allegedly violated was clearly established at the time of the defendant's actions. *Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir.1988). If the legal norm allegedly violated *was not* clearly established at the time of the defendant's conduct, then the defendant is entitled to summary judgment. *Id.* If, however, the legal norm allegedly violated *was* clearly established, then the court must resolve a second legal issue: does there exist a genuine issue of fact as to whether the defendant's conduct violated that clearly-established legal norm. *Rich v. Dollar, supra,* 841 F.2d at 1564.

■■■ In determining whether the legal norm at issue was clearly established, the court must determine whether the contours of the right were sufficiently clear that a reasonable official would have understood that what he was doing violated that right. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, 531 (1987). To be clearly established:

> [T]he federal law by which the government official's conduct should be evaluated must be preexisting, obvious and mandatory so that a similarly situated, reasonable government agent would be on notice that his or her questioned conduct violates federal law under the circumstances.

---

9. The plaintiff has not alleged that Standley was acting outside the scope of his discretionary authority. A review of the facts in the record reveals "objective circumstances which ... compel the conclusion that his actions were under-taken pursuant to the performance of his duties and within the scope of his authority." *Courson v. McMillian,* 939 F.2d 1479, 1487 (11th Cir. 1991). *See Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir.1988).

*Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1185 (11th Cir.1994). "[P]re-existing law must dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Lassiter v. Alabama A & M Univ., Bd. of Trustees,* 28 F.3d 1146, 1149 (11th Cir.1994) (en banc).

■■ The plaintiff alleges that defendant Mike Standley refused to reinstate garbage collection services on 19th Street, and made racial and derogatory remarks to her. In her deposition, the plaintiff testified that Standley refused to assist her in her dispute with the Bryans, and informed the plaintiff that the Bryans "could build a train station or anything that they chose to build there." (Crenshaw dep., p. 38) The plaintiff also testified that Standley announced on a radio station that the plaintiff's garbage would not be picked up until the plaintiff put it in the proper place. (Crenshaw dep., p. 82) In addition, defendant Standley, and Clayton Adkinson, the city attorney, turned their backs while the plaintiff's son and the plaintiff's friend were speaking during a city council meeting concerning problems with 19th Street. (Crenshaw dep., p. 52)

I conclude that it was not clearly established at the time these acts allegedly occurred that such acts would have violated the plaintiff's constitutional rights. The plaintiff has failed to meet her burden of showing that the federal rights allegedly violated were clearly established. *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1150 n. 3 (11th Cir.1994) (en banc). As to the alleged racial and derogatory remarks, such statements are not considered constitutional violations. *Hopson v. Fredericksen,* 961 F.2d 1374, 1378 (8th Cir.1992), *Oltarzewski v. Ruggiero,* 830 F.2d 136 (9th Cir.1987), *Collins v. Cundy,* 603 F.2d 825, 827 (10th Cir.1979). In her deposition, the plaintiff, when asked about Standley's other alleged remarks, was unable to explain how his remarks displayed discrimination against her on the basis of her race.[10] "Generalized allegations of constitutional violations ... are insufficient to rebut an official's assertion of a qualified immunity defense." *Maraziti v. First Interstate Bank of California,* 953 F.2d 520, 524 (9th Cir. 1992). In sum, it simply cannot be said that pre-existing law dictates or truly compels the conclusion that for every like-situated reasonable government agent, what Standley did violated federal law in the circumstances. *See Lassiter v. Alabama A & M Univ., Bd. of Trustees,* 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc).

### F. *Plaintiff's Post–Complaint Motions*

■■ Since the filing of the amended complaint, the plaintiff has filed numerous motions, many of which concern third parties not defendants in this action. Her "Motion for Protection from Further Alienation and Conspiracy to Interfere with Civil Rights" [doc. 64] attempts to state a claim under Title 42, United States Code, Section 1985(3). That statute authorizes a cause of action for damages for conspiracies which deprive persons of the equal protection of the law or other federal rights, privileges, or immunities. The plaintiff alleges that Clayton Adkinson, city attorney of DeFuniak Springs and assistant state attorney for Walton County, conspired with Ronald Bryan to deprive her of the equal protection of the law, in that Adkinson refused to allow Bryan to be arrested or prosecuted despite the requests of the plaintiff. The motion is essentially an attempt to amend the complaint by adding an allegation of conspiracy to the conduct that is substantively discussed earlier. This motion must be, and is, DENIED. Plaintiff has failed to allege or demonstrate a racial or "class-based, invidiously discriminatory purpose" behind the alleged action of Adkinson and Bryan. *Burrell v. Bd. of Trustees of Georgia Military College,* 970 F.2d 785, 793 (11th Cir.1992); *Lucero v. Op-*

---

**10.** While the qualified immunity analysis requires an objective analysis of the official's acts, *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), where the alleged constitutional violation necessarily involves state of mind, i.e., discriminatory intent, a court may properly consider whether the plaintiff has factually supported her allegations as to the defendant's state of mind. *Fiorenzo v. Nolan,* 965 F.2d 348, 351–52 (7th Cir.1992); *Hull v. Cuyahoga Valley Bd. of Educ.,* 926 F.2d 505, 512 (6th Cir.1991).

*eration Rescue of Birmingham,* 954 F.2d 624, 630 (11th Cir.1992). Substantively, it fails for the reasons set out earlier in this order. In addition, she has failed to show any form of agreement by Adkinson and Bryan to violate her constitutional rights. *See Simmons v. Poe,* 47 F.3d 1370, 1377 (4th Cir.1995).

The plaintiff has also filed another documents entitled "Complaint for Temporary Restraining Order, Injunctive Relief and Declaratory Judgment and Damages" (doc. 69). It alleges that two City of DeFuniak Springs police officers harassed her by giving her a trespass warning at the request of Bryan. The plaintiff's subsequent motion (doc. 74) alleges that the police verbally harassed her and refused to take action against Bryan. As stated previously in this order, the plaintiff has failed to show that any actions taken by the police have been motivated by race. Also, verbal harassment, even if racial in nature, is not a constitutional deprivation under Section 1983. *Gaut v. Sunn,* 810 F.2d 923, 925 (9th Cir.1987). *See Huffman v. Fiola,* 850 F.Supp. 833, 837 (N.D.Cal.1994); *Slagel v. Shell Oil Refinery,* 811 F.Supp. 378 (C.D.Ill.1993). The plaintiff's other motion labeled "Intentional Infliction of Emotional Distress and Harm" (doc. 72) recapitulates allegations from previous motions, but does not request relief, and is denied. *See* Rule 7(b), Federal Rules of Civil Procedure. The plaintiff's motions must all be, and are, DENIED.

The plaintiff also moves for stay of an order entered by the state court which apparently requires the plaintiff to remove the large accumulation of garbage on her property. (doc. 74) This matter is controlled by the anti-injunction statute: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283 (1994). The statute applies to injunctions granted by state courts as long as they are in effect. *Garcia v. Bauza–Salas,* 862 F.2d 905 (1st Cir.1988). Because the plaintiff has not demonstrated the applicability of any of the exceptions under the statute,

her motion is DENIED. *See McFarland v. Scott,* — U.S. —, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994).

### G. *Defendant's Motion To Impose Costs, Expenses and Fees*

█ The defendants have moved pursuant to 28 U.S.C. § 1927 to impose costs, expenses, and attorney's fees upon the plaintiff. (doc. 66) The defendants argue that the plaintiff's filing of duplicative and insufficient motions has caused the defendants to incur unnecessary, excess costs and attorney's fees. Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

A court may impose sanctions under Section 1927 against an attorney or litigant where that attorney or litigant has "acted in an objectively unreasonable manner by engaging in a 'serious and studied disregard for the orderly process of justice' ... or where a 'claim [is] without a plausible legal or factual basis and lacking in justification.'" *Pacific Dunlop Holdings, Inc. v. Barosh,* 22 F.3d 113, 119 (7th Cir.1994) (citations omitted). The Second Circuit Court of Appeals has held that attorney's fees may not be awarded against non-lawyers under Section 1927, *Sassower v. Field,* 973 F.2d 75 (2nd Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1879, 123 L.Ed.2d 497 (1993), while the Ninth Circuit has held that Section 1927 is applicable to *pro se* plaintiffs. *Wages v. I.R.S.,* 915 F.2d 1230 (9th Cir.1990), *cert. denied,* 498 U.S. 1096, 111 S.Ct. 986, 112 L.Ed.2d 1071 (1991). The Eleventh Circuit has not explicitly addressed the issue, but has stated that Section 1927 allows district courts to "assess attorney's fees against litigants, counsel, and law firms who willfully abuse the judicial process by conduct tantamount to bad faith." *Avirgan v. Hull,* 932 F.2d 1572, 1582 (11th Cir.1991), *cert. denied,* 502 U.S. 1048, 112 S.Ct. 913, 116 L.Ed.2d 813 (1992).

Assuming that Section 1927 is applicable as to *pro se* plaintiffs, I do not find that the

imposition of costs, expenses, and attorney's fees is warranted here. While the defendants target the plaintiff's numerous post-complaint motions as causing them unnecessary effort, the mere filing of motions, without more, does not display a willful abuse of the judicial process by conduct tantamount to bad faith on the part of the plaintiff. The essence of the plaintiff's complaint and motions is that the city refuses to pick up her garbage, for which she pays a fee. That is not a frivolous complaint, even though it is not of constitutional magnitude. It seems only reasonable that some accommodation can and should be reached between the plaintiff and the city on what must be characterized as a petty, but real, dispute. Accordingly, the defendants' motion is DENIED.

## III. *CONCLUSION*

For the reasons discussed above, the defendants' motion for summary judgment is GRANTED. (doc. 35) The plaintiff's post-complaint motions are all DENIED. (docs. 64, 69, 72, 74) The defendants' motion to impose costs, expenses and attorney's fees is DENIED. (doc. 66) Judgment shall be entered for the defendants.

DONE AND ORDERED.